## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ROBERT M. GERBER, AS TRUSTEE OF          :
ROSALIE GERBER TRUST, WILLIAM J.          :
GILLIGAN AND JAYNE GILLIGAN,              :
HUSBAND AND WIFE, SANFORD R.              :
HOFFMAN AND BETH L. HOFFMAN,              :
HUSBAND AND WIFE,                         :
AND JAMES D. BURNS,                       :

           Plaintiffs,          :    CIVIL ACTION NO.
                  :    05-10782-DPW
           v.                  :

ROBERT S. BOWDITCH, JR.,                  :
GERALD SLAVET, STEVEN RIOFF,              :
AND BSR ASSOCIATES,                       :

           Defendants.          :

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendants move to dismiss because the Complaint fails to plead fraud with particularity as required by the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. 9(b), and therefore fails to state a claim of securities fraud or common law fraud. The balance of Plaintiffs' claims are premised on the identical factual allegations as the fraud claims. Since these claims sound in fraud, they, too, must be dismissed.

## BACKGROUND

## SUMMARY OF ALLEGATIONS

### A.    The Parties

Plaintiffs are former limited partners in a Massachusetts limited partnership known as Old Salem Associates Limited Partnership ("Old Salem" or the "Partnership"). Old Salem owns

a rental housing project called Fairweather Apartments with units in Beverly, Danvers, Peabody and Salem (the "Project"). Ex. A at 1.[1]

Defendant BSR Associates ("BSR") is a partnership which is alleged to be owned by an affiliate of the individual defendants. The individual defendants are partners of BSR. Bowditch and Slavet are also general partners of Old Salem and Rioff is a limited partner.

**B.    The September 30 Letter**

In response to an offer set forth in a letter dated September 30, 2004 (the "September 30 Letter"), Plaintiffs each sold their interests in Old Salem to BSR for $50,000 per unit. Plaintiffs now assert that they relied on certain information in the September 30 Letter in deciding to sell their Partnership interests and that the September 30 Letter contained misstatements or omitted material information that led them to sell their interests at an unfair price.

The September 30 Letter is attached in its entirety to the Complaint as Exhibit A. The September 30 Letter set forth an offer to purchase Partnership interests at $50,000 per unit. Ex. A at 1. It also stated that, "This offer should not be construed as a representation or statement made by the Purchaser as to the value of a unit or the fairness of the Purchase Price . . . . No independent person has been retained to evaluate or render any opinion with respect to the fairness of the Purchase Price and no representation is made by the Purchaser, the General Partners or any affiliate thereof as to such fairness." Ex. A at 3.

The September 30 Letter also provided certain information about the state of the Partnership's operations. For instance, the Project is federally subsidized and is subject to a first mortgage loan insured by the Department of Housing and Urban Development. Ex. A at 1. In addition, the Partnership has a loan obligation, referred to as the Purchase Money Note, to an affiliate of the General Partners of Old Salem. Ex. A at 1. On the topic of these loans, the

---

[1] Exhibits referenced herein are attached to Affidavit of Stephen Roberts.

September 30 Letter stated that, "After payment of Partnership expenses (including payments in respect of the Purchase Money Note) there has been no cash flow available for distribution to the Investor Limited Partners for some time. . . .    Pursuant to the terms of the [Partnership Agreement] . . . Project cash flow and capital transaction proceeds must be applied to Partnership debt, including the first mortgage and the Purchase Money Note.  It is therefore likely that no cash flow would be available for distribution to the Investor Limited Partners for many years." Ex. A at 2.  In addition to this discussion, the September 30 Letter directed limited partners to the 2003 audited financial statements that they had recently received for further details. Ex. A at 2.

The September 30 Letter also contained a discussion of what is commonly referred to as "phantom income."  *Id.* at 1, 2.  When the Partnership was initially formed, limited partners received tax benefits as a result of Partnership losses.  In recent years, however, the Partnership has received income which, while allocated to limited partners for tax purposes, is not actually distributed to them, but rather is applied to Partnership debt.  Ex. A at 2.  The September 30 Letter noted that such phantom income was expected to increase in 2004, and each year thereafter. *See* Ex. A at 1.

On the subject of current and future rent levels, the September 30 Letter stated that the Partnership "currently receives interest subsidies or payments from HUD as well as rental subsidies pursuant to Section 8 Housing Assistance Payments ("HAP") Contracts that subsidize 220 of the 321 rental units.  These Section 8 contracts will expire on March 30, 2005.  The General Partners will request a renewal of each Section 8 contract but it is not known what rent level HUD will approve at this time." Ex. A at 2.

### C.    Plaintiffs' Allegations

In substance, Plaintiffs assert that the September 30 Letter's statements about the

Partnership's inability to support cash distributions to Limited Partners were inaccurate, because allegedly the Project was worth more than $11.3 million, the combined total of the Project's debt of approximately $9 million and anticipated rehabilitation and other expenses of some $2.3 million.[1]  Complaint, ¶46; Ex. A at 2.  Indeed, Plaintiffs assert, on information and belief, that the Project is worth over $15 million.  Complaint, ¶94.  According to Plaintiffs, the Project could receive increased rents of an unspecified amount through a HUD program called Markup-to-Market (the "Markup-to-Market Program").  Complaint, ¶60.  Plaintiffs assert that the increased rents would be sufficient to allow a refinancing or a sale at a level sufficient to yield a return to the Limited Partners after payment of debt and anticipated expenses.  Complaint, ¶¶ 82, 84.

Plaintiffs further assert, on information and belief, that the Defendants acted fraudulently, because they allegedly knew that the Project could be refinanced or sold at a price sufficient to yield a return to the Limited Partners, but said otherwise in the September 30 Letter and had the motive to misstate the likelihood that Limited Partners would receive a return of capital in order to be able to purchase Partnership units at a lower price.  Complaint, ¶¶ 85-87.

These allegations are insufficient to state a claim of fraud.

## ARGUMENT

**I.    THE COMPLAINT FAILS TO PLEAD FRAUD WITH THE PARTICULARITY REQUIRED BY THE PSLRA AND RULE 9(b).**

**A.    To Recover On Their Fraud Claims, Plaintiffs Must Plead And Prove That Defendants Made False Or Misleading Statements With The Intent To Defraud Plaintiffs.**

Plaintiffs' claim under Section 10(b) of Securities Exchange Act of 1934 ("Exchange Act") (Counts I and II) requires that Plaintiffs prove, among other things, that Defendants made false or misleading statements with an intent to defraud, or *scienter*.  *See, e.g., Ernst & Ernst v.*

---

[1] Defendants refer to the allegations of the Complaint solely for purposes of this motion and do not admit or concede them.

*Hochfelder*, 425 U.S. 185, 186 (1976); *In re Cabletron Sys., Inc.*, 311 F.3d 11, 27 (1st Cir. 2002). Similarly, Plaintiffs' claim of common law fraud and misrepresentation (Count III) requires proof of these elements. *See, e.g., Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 68 (1st Cir. 2005) (applying Massachusetts law). The Complaint fails to properly plead either falsity or *scienter* and therefore must be dismissed.

**B.    The Complaint Fails To Plead With Specificity Why The Statements Upon Which Plaintiffs Have Allegedly Relied Are False Or Misleading.**

The PSLRA requires that securities fraud be pled with a high level of specificity, while Rule 9(b) imposes a parallel requirement on pleading common law fraud. Plaintiffs must allege particularized facts that not only identify the specific statements that are alleged to be false, but that show *why* those statements were false. *See Greebel v. FTP Software*, 194 F.3d 185, 193-94 (1st Cir. 1999) ("[t]he PSLRA's pleading standard is congruent and consistent with the pre-existing standards of this circuit;" Rule 9(b) requires a fraud plaintiff to specify each allegedly misleading statement or omission, and to explain why the challenged statement or omission is misleading by providing factual support). Moreover, to the extent that an allegation is one expressly or implicitly made on information and belief, the source of the information and the reason for the belief must be set forth. *See* Section 21D(b)(1) of the Exchange Act, 15 U.S.C. §78U-4(b)(1) (allegation regarding misstatement or omission in securities fraud cases made on information and belief "[must] state with particularity all facts on which that belief is formed"). *See, e.g., In re Peritus Software Servs., Inc. Sec. Litig*, 52 F. Supp. 2d 211, 218 (D. Mass. 1999) (discussing this PSLRA requirement); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991) (explaining that Rule 9(b) requires that the complaint state its sources when an allegation is made on information and belief). If Plaintiffs do not reveal the source of their

information, they must plead with particularity other sufficient facts to support their information and belief allegations. *In re Cabletron,* 311 F. 3d at 30.

Here, the substance of the Complaint is that the statements in the September 30 Letter concerning the unlikelihood that the proceeds of a refinancing or sale of the Project would be sufficient to allow cash flow to the Limited Partners in the short-term were false. Complaint, ¶¶79-81, 84. Plaintiffs assert that these statements were false because the Project could be refinanced or sold for more than $15 million, an amount sufficient to allow a return to limited partners. Complaint, ¶¶92-96. Plaintiffs, however, provide no specific facts as the basis for this assertion. For example, there is no allegation of what rent levels Plaintiffs believe the Project is or should be receiving, or how those rents would support Plaintiffs' asserted valuation. *Cf. AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC,* 254 F. Supp. 2d 373, 385 (S.D.N.Y. 2003) (plaintiffs' claim failed to satisfy Rule 9(b) because "[a]lthough the plaintiffs have claimed in conclusory terms that the loss figures were materially false, they have provided no indication of the amount by which the figures were supposedly under or overstated"). Plaintiffs allege that they "learned" of the Project's $15 million value after selling their interests, but do not say how they learned that information, nor do they disclose the source of their learning. Complaint, ¶92.

This unsupported allegation is similar to the allegations in the bank cases of a decade ago that loan loss reserves were inadequate and should have been higher. Without specificity as to *why* the reserves should have been higher and without particularized facts supporting that conclusion, the allegations were repeatedly held to be insufficient. *See Lindner Dividend Fund Inc. v. Ernst & Young,* 880 F. Supp. 49, 58 (D. Mass. 1995) (collecting cases); *see also, In re Aegon N.V. Sec. Litig.*, 2004 WL 1415973, at *6-7 (S.D.N.Y. June 23, 2004) (dismissing claims where plaintiffs failed to allege "particular facts supporting their theory that the Defendants'

failure to take the accounting charges earlier was due to something nefarious, rather than simply imperfect economic forecasting"). While a court will assume that factual allegations "are true when passing on a motion to dismiss, this tolerance does not extend to legal conclusions or bald assertions," such as those that are present here. *See Lindner,* 880 F. Supp. at 57 (citation omitted).

To be sure, the Complaint also includes claims that the Project was not participating in the Markup-to-Market Program and that if it had done so, rents would have been higher. Complaint, ¶¶61, 85. Again, however, Plaintiffs' pleading is inadequate. The assertion that the Project was not participating in the Markup-to-Market Program is expressly made on information and belief – without the source of that information being identified. *Id.* at ¶61. The allegation is particularly strange because the audited financial statements referenced twice in the September 30 Letter about which Plaintiffs complain explain that 160 of the Project's units are indeed participating in that subsidy program.[2] *See* Ex. B at §§1, 8.

In any event, Plaintiffs fail to plead *why* the Markup-to-Market Program would make the Project able to receive a loan of $15 million or be sellable at that price. Indeed, even if a project is admitted to the Markup-to-Market Program, the term of admission is uncertain, and the program itself is subject to annual appropriations. 24 C.F.R. 401.554 (appropriations); 24 C.F.R.

_____

[2] On this motion, the Court may properly consider the September 30 Letter, which is an exhibit to the Complaint, as well as the financial statements, because they are referenced in the September 30 Letter upon which Plaintiffs base their claim and which Plaintiffs incorporated in their Complaint. *See In re Raytheon Securities Lit.,* 157 F. Supp. 2d 131, 146 (D. Mass. 2001) (court may consider documents "pertinent to the action or referenced in the complaint"); *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir. 1996) (court may consider entirety of document integral to or relied on in framing the complaint); *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993) (affirming propriety of considering documents referred to in complaint on motion to dismiss); *Romani,* 929 F. 2d at 879 n.3 (defendant may rely upon pertinent documents which plaintiff failed to introduce as part of his pleading in support of his motion to dismiss, and such does not convert the motion into a motion for summary judgment). *See also,* Fed. R. Evid. 106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing . . . which ought in fairness to be considered contemporaneously with it."); *United States v. Boyland,* 898 F.2d 230 (1st Cir. 1988) (whether a separate document must be admitted will depend on the facts - specifically whether the separate document is necessary to place the evidence in context, so as to correct an otherwise misleading impression from the evidence admitted).

595 (term of the contract renewals determined by the appropriate HUD official); Ex. B at §8

("annual assistance is subject to annual appropriations and increases pursuant to [the enabling

act]").  Plaintiffs' conclusory allegations do not address these or any other factors relevant to the

effect the Markup-to-Market Program may have on valuation.  Thus, the most the Complaint

alleges is that more rent would make the Project more valuable, hardly the level of specificity

required by the PSLRA or Rule 9(b).  *Cf., Correa-Martinez v. Arrillaga-Belendez,* 903 F.2d 49,

52 (1st Cir. 1990), *overruled on other grounds by* 367 F.3d 61 (1st Cir. 2004) (a reviewing court

considering a motion brought under Rule 12(b)(6) is obliged neither to "credit bald assertions,

periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation").

In short, when the foregoing allegations that are expressly or implicitly made on

information and belief – but which are not properly supported by identified sources for the

information or by other sufficient facts – are set aside, as they must be under the PSLRA and

Rule 9(b), the Complaint does not plead *why* the statements in the September 30 Letter are false.

As a result, the Complaint must be dismissed.

### C.    The Well-Pled Allegations In The Complaint Do Not Give Rise To A Strong Inference Of *Scienter*.

#### 1.    The PSLRA And Rule 9(b) Require Plaintiffs To Provide Factual Support For The Allegations Of Fraud.

Under the PSLRA, the Complaint must, "with respect to each act or omission alleged to

violate [the Exchange Act], state with particularity facts giving rise to a strong inference that the

Defendants acted with the requisite state of mind."  Section 21D(b)(2) of the Exchange Act, 15

U.S.C. §78u-4(b)(2).  *See, e.g., Lirette v. Shiva Corp.,* 27 F. Supp. 2d 268, 275 (D. Mass. 1998).

For a securities fraud claim, the requisite state of mind is *scienter,* or the "intent to deceive,

manipulate or defraud."  *Greebel,* 194 F.3d at 194.  In evaluating whether a complaint pleads

*scienter* with sufficient particularity, a court will scrutinize the complaint to determine whether there are specific allegations of fact giving rise to a strong inference of fraudulent intent, keeping in mind the fact that the "pleading of scienter may not rest on a bare inference that a defendant 'must have had knowledge of the facts.'" *In re Galileo Corp. Shareholders Litig.*, 127 F. Supp. 2d 251, 264 (D. Mass. 2001) (citation omitted). Instead, "inferences of scienter survive a motion to dismiss only if they are both reasonable and 'strong.'" *Greebel*, 194 F.3d at 195-96. When "the plaintiff brings his [fraud] claim on information and belief, he must set forth the source of the information and the reasons for the belief." *Aldridge v. A.T. Cross Corp.,* 284 F.3d 72, 78 (1st Cir. 2002). If plaintiffs do not reveal the source of their information, they must plead with particularity other sufficient facts to support their information and belief allegations. *In re Cabletron,* 311 F.3d at 30. In reviewing whether other sufficient facts have been pled, a reviewing court must evaluate, *inter alia, "*the level of detail provided by the [unnamed] sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the allegations, the number of sources, the reliability of the sources, and similar indicia." *Id.*

Rule 9(b) of the Federal Rules of Civil Procedure imposes parallel pleading requirements as to the *scienter* allegations of a common law claim of fraud. *See, e.g., Maldonado v. Dominguez,* 137 F.3d 1, 9 n.5 (1st Cir. 1998) (observing that the standard for pleading *scienter* under the PSLRA does not differ from that which the First Circuit has historically applied). The complaint cannot rest on bare assertions of fraudulent intent, but must instead provide some factual support for the allegations of fraud. *See, e.g., Wayne Investment, Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 13 (1st Cir. 1984); *New England Data Services, Inc. v. Becher,* 829 F.2d 286, 288 (1st Cir. 1987). Under Rule 9(b), like under the PSLRA, where allegations of fraud are explicitly

or implicitly based on information and belief, the complaint must set forth the source of the information and the reasons for the belief. *Romani*, 929 F.2d at 878.

### 2. Plaintiffs' *Scienter* Allegations Fail To Meet The Particularity Requirement.

Here, the essential premise of Plaintiffs' assertion of fraud is that Defendants knew that the Project could be refinanced or sold for an amount that would pay existing debt and anticipated expenses and allow a return to limited partners, but said otherwise in the September 30 Letter. This allegation, in turn, is based on two sets of allegations:

- that the Project was worth more than $15 Million in light of the Markup-to-Market Program, Complaint, ¶¶ 8, 92, 94; and

- that, "[g]iven Defendants' vast experience controlling the business of the Partnership and with respect to other Section 8 housing projects," Defendants must have known the Project's value and that it was sufficient to support a return to limited partners, Complaint, ¶¶64, 84.

While sometimes couched in the language of what "plaintiffs have learned" since the tender offer, Plaintiffs' *scienter* allegations are all made on information and belief. Complaint, ¶¶66, 84-87, 90-94. The First Circuit, in its application of both Rule 9(b) and the PSLRA, does not allow plaintiffs who resort to such circuitous pleading techniques to evade compliance with the heightened pleading requirements. *See Romani*, 929 F.2d at 878 (affirming finding that complaint did not plead fraud with sufficient particularity where complaint was implicitly based only on information and belief). *Cf., In re Cabletron*, 311 F.3d at 28 (requiring confidential source pleadings to comply with the "information and belief" particularity requirements of 15 U.S.C. §78u-4(b)(1)); *Van Ormer et al. v. Aspen Tech.*, 145 F. Supp. 2d 101, 103 (D. Mass.

2000) (allegations based on investigation by counsel are similar to those based on information and belief and therefore complaint must specify the facts upon which the information is based).

Indeed, if "Plaintiffs have learned" of facts giving rise to a finding of fraud, then surely they are in a position to identify the source of their learning, or to provide some other corroborating information. *Cf. Fenn v. Trans National Travel, Inc.,* 14 Mass. L. Rptr. 714, 2002 WL 1466481, *10 (Mass. Super. 2002) (granting defendant's motion to dismiss, or in the alternative, for summary judgment where "[t]he facts that would be essential to the plaintiffs' common law claims [were] matters that would, by their nature, be within the plaintiffs' own personal knowledge, and therefore subject to being set forth in their own affidavits" and yet plaintiffs failed to do so). Instead, they frequently fail to state the basis for their belief, and even when they do, the facts pled fall far short of creating even a reasonable inference of fraud, let alone a strong one. This type of pleading brings the policy concerns of the PSLRA and Rule 9(b) to the forefront and warrants dismissal, since there can be no assurance that Plaintiffs' information and belief allegations are supported by their own, or their sources', personal knowledge, as opposed to mere speculation. *See, In re Cabletron,* 311 F. 3d at 22 n.4, 30. *See, e.g., United States v. Karvelas,* 360 F.3d 220, 229 n.9 (1st Cir. 2004) (the First Circuit has strictly applied the heightened pleading requirements in securities fraud cases, due to its concern that "a plaintiff with a largely groundless claim will bring a suit and conduct extensive discovery in the hopes of obtaining an increased settlement.") (citation omitted); *Konstantinakos v. FDIC,* 719 F. Supp. 35, 38 (D. Mass. 1989) ("The rule is especially important in securities fraud cases where the strike suit value of a complaint is high.").

For instance, the allegations of the Project's value are accompanied by the assertion that the Markup-to-Market Program would have allowed the Partnership to receive additional rents.

Complaint, ¶¶60, 82. But there are no specifics about rents received or potentially received, with or without the Markup-to-Market Program, despite the fact that the limited partners receive the Partnership's annual financial information. *See supra* at 7. While the Complaint reiterates Plaintiffs' position on value over and again, it provides no factual basis whatsoever to support the asserted $15 million valuation.

Likewise, with respect to Defendants' alleged knowledge of the Project's asserted value, Plaintiffs' pleading amounts to little more than, *Defendants "must have known" because they (or two of them) are general partners and they have been involved in other Section 8 housing projects.* The first leg in the attempted syllogism – that the Project is worth $15 million – is unsubstantiated; the second leg is no better than conjecture. *See, e.g., Baron v. Smith*, 285 F. Supp. 2d 96, 108 (D. Mass. 2003) (*scienter* allegations insufficient where the evidence of *scienter* was "simply that the defendants were in a position to know the allegedly omitted facts"); *In re Sepracor, Inc. Secs. Litig.*, 308 F. Supp. 2d 20, 31 (D. Mass. 2004) ("scienter by status" is insufficient); *Carney v. Cambridge Tech. Partners, Inc.*, 135 F. Supp. 2d 235, 255 (D. Mass. 200) ("This kind of pleading, attributing knowledge to a defendant merely because of the defendant's status in a corporation, generally fails as a method of meeting the rigorous requirements for pleading scienter."). Plaintiffs point to nothing about experience with Section 8 housing projects that would create a strong inference that Defendants had some specialized knowledge that the Project would be capable of generating rents of a level that would allow a refinancing or sale for $15 million. *Cf. Lirette*, 27 F. Supp. 2d at 283 ("[with respect to matters particularly within the opposing party's knowledge], the allegations must be accompanied by a statement of facts upon which the belief is founded") (alteration in original) (citation omitted). Without some factual foundation, these allegations do not create a strong inference that

Defendants knew that the Project had a value of $15 million. *See, e.g., Suna v. Bailey Corp.,* 107 F.3d 64, 68 (1st Cir. 1997) (affirming dismissal where plaintiffs "offer[ed] no factual support for their conclusory allegations that [defendant] knew of adverse information"); *Romani,* 929 F.2d at 881 ("Without any shred of factual support for plaintiff's hypothetical tale of deception, we are faced with precisely the sort of fishing expedition for fraud that Rule 9(b) is designed to prevent.").

Plaintiffs seek to buttress their weak claim of *scienter* by asserting, again without stating the basis, that they believe that Defendants deliberately refrained from seeking increased rent subsidies, essentially to depress the value of the Project. Complaint, ¶85. Without providing a factual basis for Plaintiffs' belief, the allegation affords the Court no opportunity to examine the strength of any proffered inference that Defendants intended to defraud Plaintiffs. As a result, the allegation is not well-pled and should be given no weight.

### 3. Plaintiffs' Bare Allegations Of Motive Lack Factual Support And Are Insufficient To Give Rise To A Strong Inference Of Fraud.

In the end, Plaintiffs' assertion of fraudulent intent comes down to motive: Defendants were offering to purchase Partnership units and had reason to wish to pay less rather than more for the Partnership units. But motive, even coupled with opportunity, is not sufficient to give rise to a strong inference of fraud. *See Greebel,* 194 F.3d at 197 ("merely pleading motive and opportunity, regardless of strength of inference to be drawn of scienter, is not enough"). The rationale for this proposition is evident: any buyer (or seller) has a motive to wish to pay less (or receive more). Unless additional, specific facts that create a strong inference of fraud are required, the PSLRA (and Rule 9(b)) would be unable to function as a screen to separate out meritless claims from those that warrant at least discovery. *See, e.g., Acito v. IMCERA Group,* 47 F.3d 47, 54 (2d Cir. 1995) (permitting a finding of *scienter* based solely upon financial

interest or motive and opportunity to mislead would expose "virtually every company in the United States"). Thus, to support an allegation of motive, a complaint is required also to plead specific facts, such as specific details relating to documents, communications or meetings, giving rise to a strong inference that a challenged statement was knowingly false when made. As this Court has stated:

> [A complaint must plead] "some additional misconduct" to survive [a] motion to dismiss. Examples of such misconduct include: "insider trading in conjunction with false or misleading statements; a divergence between internal reports and public statements; disclosure of inconsistent information shortly after the making of a fraudulent statement or omission; bribery by top company officials; evidence of an ancillary lawsuit, charging fraud, which was quickly settled; disregard of current factual information acquired prior to the statement at issue; accounting shenanigans; and evidence of actions taken solely out of self-interest."

*Baron,* 285 F. Supp. 2d at 96 (quoting *Geffon v. Micrion Corp.,* 249 F.3d 29, 36 (1st Cir. 2001)) (granting motion to dismiss where plaintiffs alleged motive and opportunity alone but no additional misconduct).

Here, Plaintiffs have entirely failed to support their motive allegations. Instead, they have alleged motive in conclusory terms, with no specific factual support creating a strong inference that Defendants actualized that alleged motive. Courts have repeatedly rejected the position that the bare allegation that a defendant's personal interest in having a stock price higher or lower because of a pending transaction, without specific factual support, is sufficient to create a strong inference of *scienter*. *See, e.g, In re Galileo Corp.*, 127 F. Supp. 2d at 270-71 ("The plaintiffs do allege that the 'inflated' stock of Galileo allowed [the defendants] to acquire one new business. . . . The amended complaint does not allege, however, when that acquisition occurred. More to the point, however, the mere statement that an acquisition occurred after Galileo's stock prices increased is insufficient even to create an inference that the two events were necessarily related, not to mention insufficient to create a strong inference. . . . [T]he

allegation . . . is but a bare pleading of motive and opportunity without allegations of other facts raising a strong inference of scienter."); *Fisher v. SpecTran Corp. and Harrison*, No. 99-12359, 2001 WL 34644311, at *4 n.4 (D. Mass. May 31, 2001) ("The complaint offers nothing more than motive and opportunity allegations:  SpecTran and Harrison had a desire to increase SpecTran's stock price to facilitate SpecTran's acquisition by Lucent.  Those allegations are not sufficient to demonstrate *scienter*, especially where the complaint is devoid of any of the other types of evidence relevant to show *scienter* (e.g., insider trading, divergence between internal reports and external statements on the same subject, etc.)"); *In re Segue Software, Inc. Sec. Litig.*, 106 F. Supp. 2d 161, 171 (D. Mass. 2000) ("conclusory allegation that the defendants stood to personally benefit from the inflation of Segue's revenues [through increased performance bonuses and through the increased value of the defendants' personal holdings in Segue] and 'had the opportunity to commit fraud'" was insufficient to create a strong inference of *scienter*, where the complaint did not allege any factual evidence of fraud, such as that the defendants engaged in any suspicious sales of Segue stock timed to coincide with the company's disputed announcements).

The *Sturm v. Marriott Marquis* opinion is particularly instructive because the allegations parallel those in this case.  26 F. Supp. 2d 1358 (D. Ga. 1998).  There, plaintiff limited partners alleged that Marriott understated the value of a hotel in a consent solicitation for a merger transaction and that it was worth more than $300 million.  Plaintiffs further alleged that through the merger, the general partner and its parent corporation were "taking the equity, value and profits of the Hotel from the Limited Partners and giving it to themselves." *Id.* at 1366.  While the plaintiffs pled that the defendants had a motive to defraud the limited partners by misstating the value of the hotel, the Court found that the plaintiffs had not alleged facts constituting strong

circumstantial evidence of *scienter* in connection with the statements in the consent solicitation regarding the hotel's value. The Court thus dismissed the claim on the basis that the allegations of motive and opportunity to defraud were not sufficient to state a claim for securities fraud. *Id.* at 1370.

After the *Sturm* plaintiffs amended their complaint and the defendants moved to dismiss a second time, the Court again dismissed the securities fraud claim insofar as it was based on the omission of certain information allegedly relevant to the hotel's value (although it allowed the claim to go forward based on other allegations). *Sturm v. Marriott Marquis Corp.,* 85 F. Supp. 2d 1356, 1371-72 (D. Ga. 2000). The Court explained that plaintiffs merely "alleged an abundance of facts establishing that the limited partnership merger benefited the Defendants to the detriment of the Plaintiffs," which was itself insufficient. *Id.* at 1371. Moreover, no strong inference of *scienter* arose from the omissions themselves and even if the omitted facts were material to the hotel's value, the plaintiffs still had not alleged sufficient facts to establish *scienter*. *Id.* at 1372. Instead, one could easily draw the opposite inference: that the omitted facts were not disclosed because the defendants did not want to mislead the limited partners through the implications to be drawn from their inclusion. *Id.*

Like *Sturm,* the Complaint in this case is entirely lacking in specific factual support relating to the alleged impact of the Markup-to-Market Program on the Project's value. It is further lacking in allegations of "additional misconduct" to give credence to the allegation that the defendants knew of this asserted value. Indeed, the Complaint does not even contain *unspecific* allegations regarding documents, reports or conversations of the sort that courts routinely hold inadequate. *See, e.g., Lirette,* 27 F. Supp. 2d 268, 283 ("General allusions to unspecified internal corporate information are insufficient to withstand a motion to dismiss."); *In*

*re Boston Tech., Inc. Sec. Litig.,* 8 F. Supp. 2d 43, 57-58 (D. Mass. 1998) (requiring that documents and internal reports be specifically identified); *In re Silicon Graphics,* 183 F.3d 970, 984-85 (9th Cir. 1999) (finding that complaint failed to meet the particularity and strong inference requirements, where complaint stated that the information was contained in internal reports and was discovered through the investigation of counsel but did not include "the sources of her information with respect to the reports, how she learned of the reports, who drafted them, or which officers received them"); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 812 (2d Cir. 1996) ("Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed a larger decline in sales is insufficient to survive a motion to dismiss.") (citation omitted); *Ressler v. Liz Claiborne, Inc.,* 75 F. Supp. 2d 43, 52-53 (E.D.N.Y. 1999) (holding that an unsupported general claim of the existence of confidential company reports containing adverse information is insufficient to survive a motion to dismiss).  The Complaint thus fails to plead *scienter* with the specificity required by the PSLRA and Rule 9(b).

4.      **The Information Contained In The September 30 Letter, Attached To the Complaint, And In The Financial Statements Referenced In That Letter, Negate Any Inference Of *Scienter*.**

Indeed, far from supporting a strong inference of *scienter*, the documents on which the Complaint relies actually support the opposite inference. *See, e.g., In re McKessom NBUC Sec. Litig.,* 126 F. Supp. 2d 1248, 1267-68 (N.D. Cal. 2000) ("Courts have routinely held that complaints disclosing facts negating *scienter* must, at the very least, explain such facts in order to support their claim of fraudulent intent.").  For instance, Plaintiffs' allegation that Defendants deliberately refrained from seeking increased rent subsidies is belied by information in the September 30 Letter upon which Plaintiffs base their claims and in the Partnership's financial

statements referenced there. The September 30 Letter states, "The Partnership currently receives interest reduction payments from HUD as well as rental subsidies pursuant to the Section 8 Housing Assistance Payment ("HAP") Contracts that subsidize 220 of the 321 rental units." Ex. A at 2. Likewise, the financial statements referenced in the Letter describe the two HAP agreements and explain that with respect to 160 units, the Partnership executed a series of interim contract extensions *"while it was in the process of completing a request to markup-to-market. . . ."* Ex. B at §8 (emphasis added). Contrary to Plaintiffs' conclusory assertions, the Partnership did seek to receive increased rents. Without some explanation in the Complaint for this plain inconsistency, Plaintiffs' assertion that Defendants deliberately refrained from seeking increases does nothing to advance their claim of fraud. *See McKesson HBOC, Inc. Sec. Litig.,* 126 F. Supp. 2d 1248, 1267-68 (D. Cal. 2000); *In re Aegon N. V. Sec. Litig.,* 2004 WL 1415973, at *14 (the allegation that Aegon failed to show its debt securities at fair market value was contradicted by Aegon's public filings, and therefore the argument that Aegon should have increased its bond default reserve because of the deteriorating performance of various borrowers was beside the point).

Similarly, Plaintiffs allege that they "learned" that after the sale of their units, the Partnership applied to HUD to increase rents, and suggest that this is evidence of fraudulent intent. Complaint, ¶91. But this is exactly what the September 30 Letter says that the Partnership planned to do. After noting that the existing Section 8 contracts would expire on March 31, 2005, the September 30 Letter stated that "the General Partners will request renewal of each Section 8 contract but it is not known what rental level HUD will approve at this time." Ex. A at 2.

As a matter of law, irrational allegations such as these cannot support a fraud claim under Rule 9(b). *See In re 1993 Corning Sec. Litig.*, No. 93 Civ. 7015, 1996 U.S. Dist. Lexis 6601, at *21 (S.D.N.Y. May 15, 1996) (granting motion to dismiss because, *inter alia*, "Plaintiffs' theory of motive makes no sense"); *Thornton v. Micrografx, Inc.*, 878 F. Supp. 931, 938 (N.D. Tex. 1995) ("Plaintiffs draw inferences of wrongdoing based upon a nonsensical premise. . . . The Court refuses to leave its common sense at the courthouse steps, and concludes that the Plaintiffs have failed to make the requisite showing of scienter to support their securities fraud claims."); *See also Kalnit v. Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001) (affirming lower court's dismissal of the complaint where plaintiffs' view of the facts defies economic reason); *Atlantic Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 514 (S.D.N.Y. 1990) (dismissing fraud claims where plaintiff's view of the facts defies economic reason, and therefore does not yield a reasonable inference of intent).

## II.    THE BALANCE OF PLAINTIFFS' CLAIMS SOUND IN FRAUD AND THEREFORE MUST BE DISMISSED FOR THE SAME REASON.

When a plaintiff's claim sounds in fraud, as Plaintiffs' claims do here, those claims must satisfy the strict pleading requirements of Rule 9(b). *Shaw v. Digital Equipment Corp.,* 82 F.3d 1194, 1223 (1st Cir. 1996). In assessing whether a complaint sounds in fraud, the court looks beyond the title of a plaintiff's claims and asks if "fraud lies at the core of the action." *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985); *In re Computervision Corp. Sec. Litig.,* 869 F. Supp. 56, 63 (D. Mass. 1994) ("It is the allegation of fraud, not the 'title' of the claim, that brings the policy concerns of the First Circuit to the forefront." ); *Hershey v. MNC Fin., Inc.*, 774 F. Supp. 367, 376 n.11 (D. Md. 1991) (Rule 9(b) applies when claims are part of one "organic whole").

Here, all of Plaintiffs' Counts IV through VIII sound in fraud since they arise out of the very same set of operative facts as the fraud claims. *See Computervision*, 869 F. Supp. at 63.

Specifically, all of Plaintiffs' claims, by their express terms, arise out of the tender offer and the allegation that the Defendants collectively made misrepresentations and omissions in connection with that tender offer. Complaint, ¶¶125, 129, 137, 140, 145. Indeed, each count incorporates by reference each of the preceding factual allegations in the Complaint, which is itself indicative of their indistinguishable factual foundations. *See Ellison v. American Image Motor Co.*, 36 F. Supp. 2d 628, 639 (S.D.N.Y. 1999) (holding that claims sound in fraud where, *inter alia*, plaintiff "incorporates by reference into the . . . claim each of the preceding allegations in the complaint, which unambiguously sound in fraud"); *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 690 (S.D.N.Y. 2000) (holding that claims sound in fraud where plaintiffs made "little . . . effort to differentiate" fraud from non-fraud claims).

Rule 9(b) therefore applies to Plaintiffs' other claims, and it requires their dismissal for the same reasons that it mandates the dismissal of Plaintiffs' fraud claims. *See, e.g., S.G. Frota v. Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986) ("[W]hen a claim for breach of fiduciary duty is based primarily upon alleged fraudulent conduct, the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply."); *Mosko v. Defillipo*, No. 91-10675-Z, 1991 WL 191211, at *2 n.2 (D. Mass. Sept. 10, 1991) (Zobel, J.) (breach of contract claim "premised upon fraud" must comport with the requirements of Rule 9(b)) (citing *Hayduk*, 775 F.2d at 443-44); *Smith v. Office of Servicemembers Group Life Ins.*, No. 97-CV-5862, 1997 WL 786535, at *3 (E.D. Pa. Nov. 24, 1997) ("because plaintiffs' breach of contract claim is essentially premised upon a theory of fraud or mistake, their complaint must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)").

### III.    THE SECONDARY CLAIMS MUST FAIL SINCE PLAINTIFFS HAVE FAILED TO SUFFICIENTLY PLEAD THE UNDERLYING FRAUD CLAIM.

In addition to sounding in fraud, the conspiracy and the aiding and abetting claims also must fail because neither claim is an independent and freestanding tort. As such, Plaintiffs must make out the underlying tort before liability attaches. *Beck II v. Prupis,* 529 U.S. 494, 503 (since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable); *In re McMullen,* 386 F.3d 320, 332 (1st Cir. 2004) (aiding and abetting liability is derivative in nature and there can be no finding of aiding and abetting liability where there has been no primary violation).

Here, where Plaintiffs fail to allege proof of the underlying tortious conduct with sufficient particularity, these secondary claims must necessarily fail, as well. *Cf. In re Segue Software,* 106 F. Supp. 2d 161, 172 (D. Mass 2000) (without a violation of Section 10(b) of the Securities Exchange Act, there can be no Section 20(a) liability); *In re Galileo Corp.,* 127 F. Supp. 2d at 271 ("In the absence of a primary violation, secondary . . . liability cannot exist.").

### CONCLUSION

Scrutiny under Rule 9(b) in the securities context is "especially strict" in the First Circuit. *See, e.g., In re Boston Technology, Inc. Sec. Litig.,* 8 F. Supp. 2d 43 (D. Mass. 1998). Here, where Plaintiffs fail to plead falsity and *scienter* with the particularity required by Rule 9(b) and the PSLRA, the entire Complaint must be dismissed.

Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), and the PSLRA, the Defendants respectfully ask the Court to dismiss this case, with prejudice.

Respectfully submitted,

**ROBERT S. BOWDITCH, JR.,**
**GERALD SLAVET,**
**STEVEN RIOFF, AND**
**BSR ASSOCIATES,**
By their attorneys,


_____/s/  Donald J. Savery_____
Steven W. Hansen ( BBO# 220820)
Donald J. Savery (BBO# 564975)
Christina N. Davilas (BBO# 655477)
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

Dated: July 25, 2005


CERTIFICATE OF SERVICE

I, Donald J. Savery, hereby certify that on this 25th day of July, 2005, I served the foregoing document by causing a true copy of same to be delivered by federal express to counsel for the Plaintiffs.


_____/s/  Donald J. Savery___
Donald J. Savery