## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT M. GERBER, *et al.*, | : |
| Plaintiffs, | :    CIVIL ACTION NO: 05-10782-DPW |
| v    : | : |
| ROBERT S. BOWDITCH, JR., *et al.*, | : |
| Defendants. | : |

---

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiffs Robert M. Gerber, as Trustee of the Rosalie Gerber Trust, William J. and Jayne Gilligan, husband and wife, Sanford R. and Beth L. Hoffman, husband and wife, and James D. Burns (collectively, "Plaintiffs"), by and through their undersigned attorneys, submit this Memorandum of Law in opposition to the Motion to Dismiss First Amended Complaint ("Motion" or "Motion to Dismiss") filed by Defendants Robert S. Bowditch, Jr. ("Bowditch"), Gerald Slavet ("Slavet"), Steven Rioff ("Rioff"), and BSR Associates ("BSR") (collectively, "Defendants").[1]

### Preliminary Statement

This case involves claims of securities fraud and common law fraud. As such, Plaintiffs' Complaint is subject to the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. 9(b). Under the PSLRA and Rule 9(b), a complaint must: (i) specify false or misleading statements and omissions, and the reasons why such statements or omissions are misleading; and (ii) plead with particularity facts giving rise to a

---

[1] Plaintiffs are filing contemporaneously with this Memorandum of Law a Cross Motion for Leave to File a Second Amended Complaint in the event the Court grants Defendant' Motion to Dismiss.

strong inference that the defendant acted with scienter, the required state of mind. *See* 15 U.S.C. §§78u-4(b)(1), (2); *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 191 (1st Cir.1999) ("*Greebel*").

Mindful of these standards as applied in this Circuit, Plaintiffs filed a twenty five-page, one hundred forty eight-paragraph Complaint which asserts, among other things, that Defendants made false and misleading statements and omissions of material fact in connection with the purchase and sale of securities, with requisite scienter, upon which Plaintiffs reasonably relied and were proximately harmed. A total of *three paragraphs* supporting Plaintiffs' fraud claims are pled "[u]pon information and belief."

Seizing upon these three "information and belief" allegations and a handful of others characterized by Defendants as "implicitly made upon information and belief," Defendants have moved to dismiss the Complaint under Rule 12(b)(6) for failure to state a cause of action. Defendants argue that Plaintiffs' failure to identify the source of and/or reasons for these several allegations runs afoul of requirements of the PSLRA and Rule 9(b), and calls for dismissal of the entire action. Defendants are wrong. Their arguments betray a fundamental misunderstanding of the requirements of the PSLRA and this Court's Rule 9(b) jurisprudence. Moreover, they are based upon a myopic, self-serving reading of the Complaint. Defendants' analysis improperly views the targeted allegations in isolation, while ignoring the numerous, specific averments supporting Plaintiffs' claims of fraud, and fails to account for the reasonable inferences to be derived from those averments.

Contrary to Defendants' suggestion, a securities fraud plaintiff is *not* required to plead with particularity every single fact upon which the fraud claim is based. On the contrary, "courts will allow private securities fraud complaints to advance past the pleadings stage when some questions remain unanswered, provided the complaint as a whole is sufficiently particular to pass

2

muster under the PSLRA." *In re Cabletron Sys., Inc.*, 311 F.3d 11, 29 (1st Cir. 2002) ("*Cabletron*"). Nor, as Defendants would have it, does the PSLRA alter the standards governing a motion to dismiss, which require that the allegations of the Complaint must be viewed as a whole, as true, and with all reasonable inferences drawn in Plaintiffs' favor. *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 78 (1st Cir. 2002) ("*Aldridge*"). Defendants' Motion to Dismiss turns this principle on its head, attempting to deny Plaintiffs the benefit of all reasonable inferences to which they are entitled at this procedural juncture. In effect, Defendants seek to impose on Plaintiffs a non-existent requirement of pleading evidence in their Complaint. The First Circuit has roundly rejected the approach urged by Defendants and this Court should not hesitate to do so as well. *Cabletron*, 311 F.3d at 33. Accordingly, Defendants' Motion to Dismiss should be denied.

## Factual Background

The genesis of this case is Defendants' acquisition of Plaintiffs' interests in a real estate limited partnership by means of a tender offer (the "Tender Offer"). Complaint ¶1. The partnership, called Old Salem Associates Limited Partnership ("Old Salem" or the "Partnership"), owns and operates four multi-unit, federally subsidized rental-housing projects located in the Boston suburbs (collectively, the "Project"). *Id.*¶2. Plaintiffs are former "Investor Limited Partners" in Old Salem. *Id* ¶3. Defendants Bowditch and Slavet are the General Partners of the Partnership and Defendant Rioff is the Partnership's initial Limited Partner and only Class A Limited Partner. *Id.* ¶3. The terms of the Tender Offer were set forth in a letter to the Investor Limited Partners dated September 30, 2004 (the "September 30 Letter"). *Id.* Exhibit A. In reliance upon Defendants' statements made in connection with the Tender Offer, Plaintiffs tendered their Partnership units for less than fair value to Defendant BSR Associates, an affiliate

of Defendants Bowditch, Slavet and Rioff. *Id.* ¶¶5, 83.

**A.**    **Allegations Of Defendants' Fraud And Misrepresentation**

All of the fraudulent statements at issue in this case are contained in the September 30 Letter.    The Complaint alleges that Defendants' fraud consisted of both affirmatively making false and misleading statements and in failing to state material facts necessary to make such statements not false and/or misleading.

**1.**    **Affirmative Misrepresentations**

The Complaint specifically identifies the false and misleading statements contained in the September 30 Letter as follows:

(i)    The Partnership was a tax shelter that had run its course;

(ii)    The Partnership's future prospects for Investor Limited Partners were limited to generating substantial phantom income tax liabilities;

(iii)    The Partnership had little or no chance of future cash distributions for Investor Limited Partners;

(iv)    A refinancing in the best-case scenario would not likely result in proceeds sufficient to repay all partnership debt and return capital to Investor Limited Partners;

(v)    Under a best-case scenario, a $7 Million loan to the Partnership would be assumed as supportable, implying this amount was the maximum that the Partnership could borrow;

(vi)    It was unlikely that the Investor Limited Partners would receive any cash distributions under the best-case scenario; and

(vii)    It is unlikely that an Investor Limited Partner would ever receive a cash return on their investment.

Complaint ¶¶76-77, 8, 79-81.

**2.**    **Omitted Material Facts**

After tendering their interests in the Partnership, Plaintiffs learned that Defendants

4

fraudulently and misleadingly omitted material facts in the September 30 Letter, including failing to disclose:

(i)    That the federal government's Markup-To-Market Program, through which existing rents could potentially be "marked up" to 150 percent or more of fair market rent levels, was available to the Partnership;

(ii)   The effect of Markup-To-Market program on the market value of the Project or its ability to refinance debt; and

(iii)  That Plaintiffs' shares had far greater value than represented in the September 30 Letter, namely $50,000 per unit.

Complaint ¶¶82, 83, 59, 60.

The Complaint goes on to describe in detail the Markup-To-Market Program including:

(i)    That the Program allows owners of Section 8 housing projects who remain in the Section 8 Program are able to "mark up" rent levels to market rates and distribute the increased cash flow resulting from such rents;

(ii)   That upon reconciliation of owner and HUD rent comparability studies, HUD will generally permit rent increases up to 150% of fair market rent and increase the federal rent subsidy to equal the difference between the current rents and the newly marked up rents; and

(iii)  That in addition, properties eligible for the Markup-to-Market Program meeting certain additional criteria are eligible to apply to HUD for a waiver permitting rent increases that exceed 150% of fair market rents.

Id. ¶¶57-59.

The Complaint alleges, upon information and belief, that the Project was eligible to participate in the Markup-To-Market Program. Complaint ¶60. The Complaint alleges, again on information and belief, that the availability of the Markup-To-Market Program substantially increased the market value of the Project, and correspondingly, Plaintiffs' respective interests in the Partnership. *Id.* ¶8. The Complaint also avers that the September 30 Letter makes no mention of the existence of the Markup-To-Market Program, namely, the availability of rent increases of 150 percent or more, its effect on the Project's market value or the Partnership's

5

ability to refinance its debt. Complaint ¶59, 82.

**B.     Allegations Of Defendants' Scienter**

> **1.     Defendants' Knowledge and Experience**

The Complaint alleges, on information and belief, that Defendants have substantial knowledge and experience with HUD's Markup-To-Market Program, the valuation of Section 8 Housing projects, and financing of such projects. Complaint ¶66. It also notes that Defendants have extensive experience in the ownership and management of multi-family residential housing and that Defendant Rioff also has served as a Senior Management Officer for the Massachusetts Housing Finance Authority. *Id.* ¶64. Under the direction of the Defendants, MB Management, an affiliated company, has developed or acquired over fifty properties, with a value exceeding $300 million. *Id.* ¶66.

The September 30 Letter's representations regarding the financing and valuation of the Project provide further support for these allegations. *Id.* ¶¶76-83. In that regard, the Letter reveals that the valuation was made by Defendants without "any current appraisal of the value of the Project," and that "[n]o independent person [w]as retained to evaluate or render any opinion with respect to the fairness of the Purchase Price." *Id.* Ex. A, p. 3. It goes on to express an opinion as to the amount of debt the Partnership could support. *Id.* p. 2.

> **2.     Defendants' Motive and Opportunity**

Defendants' motivations for their omissions and misrepresentations are clearly articulated in the Complaint to include:

> (i)     Acquiring Plaintiffs' economic interests in the Partnership;
>
> (ii)    Acquiring voting control over the Partnership's sale of the Project or refinancing of its debt;
>
> (iii)   Enriching themselves unfairly at the expense of and to the detriment of Plaintiffs;

(iv)     Preventing Plaintiffs from making further inquiry into the value of the Partnership;

(v)      Preventing Plaintiffs from learning the Partnership's true value; and

(vi)     Inducing Plaintiffs to sell their interests in the Partnership for less than fair value.

Complaint ¶¶68-70, 86-88.   Through the September 30 Letter, the Defendants created the opportunity to achieve these benefits that motivated Defendants' fraudulent misstatements and wrongful omissions.   Complaint ¶¶69, 70.   In reliance on those misleading statements and omissions contained in the September 30 Letter, Plaintiffs tendered their shares to the Defendants.   *Id.* ¶88.

### 3.     Additional Allegations Supporting A Strong Inference of Scienter

The Complaint alleges that on or about December 1, 2004, in short temporal proximity to the September 30 Letter, Defendants submitted to HUD a partnership rent compatibility study in connection with its application to increase the Project's rents under the Markup-To-Market Program.   Complaint ¶91.   Plaintiffs also have alleged that at all relevant times, the Partnership was capable of supporting a loan of $15 million, more than twice the amount of the $7 million loan that Defendants claimed the Partnership could support.   *Id.* ¶92.   Plaintiffs have further alleged that at all relevant times, the Partnership could have sold the Project for at least $15 million, and likely much more.   *Id.* ¶94.

The Complaint avers that had either a refinancing or sale been pursued, there would have been substantial additional proceeds available to return each Investor Limited Partner's capital contribution and provide for additional cash distributions.   Complaint ¶¶93, 95.   Under either scenario, Plaintiffs would have received substantial cash distributions from the Partnership, which would have greatly exceeded the amount paid by BSR for their respective Limited

Partnership interests. *Id.* ¶96. Defendants' fraudulent and misleading statements and omissions deprived Plaintiffs of this value. *Id.*

### Legal Argument

### POINT I
### THE APPLICABLE LEGAL STANDARDS

A.    **The Standard of Review**

The PSLRA has not abrogated the standards applicable when considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). In these circumstances, the Court must take well-pleaded allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff. *Aldridge*, 284 F.3d at 78. A complaint should not be dismissed under Fed. R. Civ. P 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Medina-Claudio v. Rodríguez-Mateo*, 292 F.3d 31, 34 (1st Cir. 2002) (internal quotation and citation omitted). Dismissal under Rule 12(b)(6) is only appropriate when there is no hope of prevailing on any theory contained in the complaint. *See Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999).

B.    **Pleading Requirements Under The PSLRA And Rule 9(b)**

In an action asserting claims of securities and common law fraud, the PSLRA and Rule 9(b) impose heightened pleading standards with respect to allegations concerning: (i) the statements claimed to be fraudulent; and (ii) whether the defendant acted with scienter. *See* 15 U.S.C. § 78u-4(b)(1)&(2); *Greebel*, 194 F.3d at 191. In this Circuit, "PSLRA and Rule 9(b) pleading standards are for all practical purposes identical." *Garvey v. Arkoosh*, 354 F.Supp.2d 73, 80 (D. Mass. 2005).

1.    **Pleading Fraud With Particularity Under 15 U.S.C. § 78u-4(b)(1) And Rule
      9(b)**

The PSLRA's pleading requirements for allegations of fraud provides, in pertinent part,

that:

> The complaint shall specify each statement alleged to have been
> misleading, the reason or reasons why the statement is misleading,
> and, if an allegation regarding the statement or omission is made
> on information and belief, the complaint shall state with
> particularity all facts on which that belief is formed.

15 U.S.C. §78u-4(b)(1) ("Section (b)(1)").  The First Circuit has interpreted Section (b)(1) as

requiring a securities fraud complaint to: (i) specify the time, place, and content of each allegedly

misleading statement; (ii) explain and provide factual support for why the statement is

fraudulent; (iii) provide specific factual allegations to support a reasonable inference that adverse

circumstances existed at the time of the statement and were known and deliberately or recklessly

disregarded by defendants; and (iv) set forth the source of the information and reasons for the

belief when allegations regarding the statement or omission are made on information and belief.

*Greebel*, 194 F.3d at 193-94.  The First Circuit has also held that the requirements set forth in

Section (b)(1) "were largely imposed under First Circuit law," and that "the strict pleading

requirements under Rule 9(b) are …consistent with the PSLRA."  *Id.*

Importantly, the First Circuit has rejected the notion that every allegation in a complaint

must satisfy the PSLRA's and Rule 9(b)'s particularity requirements.  *Cabletron*, 311 F.3d at 32-

33.  Rather, in this Circuit, courts must look to the "'totality of the circumstances'" and

determine whether "the complaint *as a whole* is sufficiently particular to pass muster under the

PSLRA.  *Id.* at 31, 32 (Emphasis added).

2.    **Pleading Scienter Under 15 U.S.C. § 78u-4(b)(2) and Rule 9(b)**

The PSLRA also provides that a complaint must, with respect to each allegedly

fraudulent act or omission, "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2) ("Section (b)(2)"). That state of mind -- scienter -- is defined as the "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976). The inference of scienter must be both reasonable and strong. *Greebel*, 194 F.3d at 195-96. The First Circuit has held that the Section (b)(2)'s pleading standards for scienter are congruent and consistent with its pre-existing standards for pleading fraud with particularity under Rule 9(b). *Id.* at 193.

The requisite showing of scienter sufficient to satisfy the pleading requirements of Section (b)(2) and Rule 9(b) can be made by demonstrating either that the defendants "consciously intended to defraud" or acted with "a high degree of recklessness." *Aldridge*, 284 F.3d at 82; *Geffon v. Micrion Corp.*, 249 F.3d 29, 35 (1st Cir. 2001). With respect to the first category of knowing conduct, the plaintiff must prove that defendants knew: (i) that the statement [or omission] was false or misleading; and (ii) that it made reference to a matter material to investors. *See id.* at 35.

The second category of recklessness, a lesser form of intent, but more than mere negligence, can render a defendant liable for securities fraud if the defendant's conduct constitutes:

> a highly unreasonable omission [or statement], involving not merely simple, or even inexcusable, negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it.

*Greebel*, 194 F.3d at 198 (quoting *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977)). Pursuant to this recklessness standard, a plaintiff must show a deviation from

ordinary standards of care creating a strong inference that the defendants were aware of the misleading nature of their conduct or that the capacity of their actions to mislead was so blatant that it would have been obvious to any reasonable actor. *Id.* A plaintiff seeking to prove scienter by recklessness must allege, with sufficient particularity, that the defendants "had full knowledge of the dangers of their course of action and chose not to disclose those dangers to investors." *Maldonado v. Dominguez*, 137 F.3d 1, 9 n. 4 (1st Cir. 1984); *see also In re PLC Systems, Inc.*, 41 F.Supp.2d 106, 114 (D. Mass. 1999).

## POINT II
### THE COMPLAINT ALLEGES WITH SUFFICIENT PARTICULARITY THAT THE STATEMENTS IN THE SEPTEMBER 30 LETTER UPON WHICH PLAINTIFFS' RELIED WERE FALSE AND MISLEADING.

The Motion to Dismiss points to three allegations in the Complaint that Defendants claim fail to meet the specificity requirements of Section (b)(1): (i) that that the Project could have been sold for at least $15 Million; (ii) that the Partnership's debt could have been refinanced for at least $15 Million; and (iii) that the availability of the Markup-to-Market Program would have increased the value of the Project. Defendants contend that without supporting facts, Plaintiffs have not properly demonstrated why the statements contained in the September 30 Letter were false and misleading, and therefore, the entire Complaint must be dismissed. *See* Defendants' Memorandum at 7-8.[2]

Defendants' arguments ignore the pleading standards of Section (b)(1) and Rule 9(b) as articulated by *Greebel* and its progeny. Pursuant to these requirements, a plaintiff is required to:

---

[2]    The Motion to Dismiss does not argue that the Complaint fails to specify "each allegedly misleading statement or omission, including its time, place and content." *Aldridge*, 284 F.3d at 78. Nor does it assert that the statements alleged to be fraudulent are not "material." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1217 (1st Cir. 1996) (claim under §10(b) and Rule 10b-5 must show, among other things, "a "misrepresentation or omission of material fact.")

> allege time, place, and content of the alleged misrepresentations
> with specificity . . . [and] also the factual allegations that would
> support a reasonable inference that adverse circumstances existed
> at the time of the offering and were known and deliberately or
> recklessly disregarded by defendants.

*Greebel*, 194 F.3d at 193-94.  Plaintiffs' Complaint here is fully consonant with that standard.

## A.    Section (b)(1)'s and Rule 9(b)'s Particularity Requirements Do Not Apply To The Allegations At Issue.

As a threshold matter, Section (b)(1)'s particularity requirement applies only to allegations identifying the statements or omissions claimed to be fraudulent; it does not apply to allegations of underlying facts that support an inference that the identified statements were fraudulent.  *See In re. Allaire Corp. Sec. Lit.*, 224 F. Supp.2d 319, 325 (D. Mass. 2002) ("*Allaire*").  In *Allaire*, defendants in a securities fraud suit filed a motion to dismiss in part based on plaintiffs' failure to identify the sources of all statements that were made on "information and belief."  *Id.* at 325-26.  Rejecting the defendants' argument, which is like the one advanced by Defendants in this case, the Court faulted defendants for "conflate[ing] the duty to identify the source of fraudulent statements with a broader -- and inaccurate -- duty to disclose the source of facts."  *Id.* at 325 (emphasis added).

None of the allegations of which Defendants complain purports to identify the fraudulent statements or omissions made by Defendants; those statements and omissions are identified in averments made on personal knowledge.  Rather, the allegations at issue set forth underlying facts supporting the inference that the identified statements were fraudulent.  Accordingly, Section (b)(1)'s and Rule 9(b)'s "pleading with particularity' requirement of identifying a plaintiff's sources [do] not apply."  *Orton v. Parametric Tech. Corp.*, 344 F. Supp.2d 290, 305 (D. Mass. 2004).

**B.**    **Plaintiffs Have Provided Sufficient Factual Support To Explain Why Defendants Statements And Omissions Were Fraudulent.**

Defendants' position that the Complaint fails to allege with sufficient particularity why the statements and omissions in the September 30 Letter were false is no more than a straw man argument. In essence, Defendants are claiming that the September 30 Letter cannot be said to be fraudulent unless the Complaint affirmatively establishes: (i) that the Project could be sold for $15 Million, and/or (ii) that the Partnership's debt could be refinanced for $15 Million; and/or (iii) that the Markup-to Market Program enabled a sale or refinance at $15 Million. This argument misses the mark. The precise valuation of the Project or amount of debt it could support is not the issue. The exact dollar amount by which the Markup-to-Market Program increased the value of the Project -- whether it be $8 Million, $80 Million, or even $800,000 -- is equally beside the point. What is pertinent, and what is sufficiently pled in the Complaint, is that the availability of the Markup-to-Market Program, and in particular its potential to increase current rents at the Project by 150%, most certainly influenced and increased the valuation of Plaintiffs' Partnership interests well beyond the value set forth in the Tender Offer and paid by Defendants.[3]

Notably, the September 30 Letter makes no mention of the existence of the Markup-To-Market Program, its potential to increase Project rents by 150 percent or more, and its effect on the Project's market value or the Partnership's ability to refinance its debt. *Id.* ¶59, 82. It is Defendants failure to disclose *any* information regarding these matters or take them into account in valuing Plaintiffs' Partnership interests, while at the same time painting a hopeless picture of the Partnership's future prospects, that renders the September 30 Letter inherently false and misleading.

---

[3] It is an eminently plausible inference that the potential for increasing the revenues of an income-producing asset by 150% has a positive impact on its valuation.

13

And there is more. Plaintiffs also have alleged that on December 1, 2004, in short temporal proximity to the September 30 Letter, Defendants submitted to HUD a partnership rent compatibility study in connection with its application to increase the Project's rents under the Markup-to-Market Program. Complaint ¶91. It is a reasonable inference that Defendants knew that the Partnership would be submitting the application for these rent increases at or before the time they submitted the Tender Offer to Plaintiffs. The allegations of the Complaint go on to demonstrate that substantial rent increases available under the Markup-to Market Program were more than a mere possibility. In fact, they were probable. *Id.* at ¶59 ("Upon reconciliation of owner and HUD rent comparability studies, HUD will generally permit rent increases up to 150% of fair market rent and increase the federal rent subsidy to equal the difference between the current rents and the newly marked up rents.") The September 30 Letter makes no mention whatever of the Partnership's intentions to seek such rent increases under the Markup-to Market Program. *Id.* Ex. A.

Thus, the Complaint's allegations regarding the Markup-to-Market Program and the Project's valuation and debt capacity do not stand alone, and Defendants' effort to view them in isolation is contrary to the rule in this Circuit. "The approach we take . . . is to look at all the facts alleged to see if they 'provide an adequate basis for believing that the defendants' statements were false.'" *Cabletron*, 311 F.3d at 29. Defendants' would have the Court simply ignore the many other allegations of the Complaint that clearly demonstrate the false and misleading nature of the identified statements and omissions in the September 30 Letter.

To the extent the Court deems it necessary to consider the allegedly unsupported allegations concerning valuation of the Project and the Partnership's borrowing capacity, it is worthy of note that Defendants have misleadingly characterized these allegations as being stated

14

"on information and belief." Defendants' Memorandum Motion at p. 4 ("Indeed, Plaintiffs assert, on information and belief, that the Project is worth over \$15 million."). In fact, the Complaint's allegations concerning the value of the Project and the amount of refinancing available to the Partnership are *not* made on information and belief. *See* Complaint, ¶¶92, 94.

Defendants have similarly mischaracterized as unsupported the Complaint's allegations concerning the Markup-to Market Program. The allegation that the Project was eligible to participate in the Markup-to-Market Program is, admittedly, stated on "information and belief." Complaint ¶60. However, this inference is reasonably drawn from other allegations in the Complaint, including the allegations: (i) that the Project's is a Section 8 project; (ii) that the Project is subject to two HAP Contracts; and (iii) that the Markup-to Market Program is available to owners of Section 8 housing projects. *Id.* ¶¶49, 53, 57. This allegation is also independently supported by the Partnership's 2003 audited financial statements, which Defendants have submitted as Exhibit B to the Affidavit of Stephen Roberts ("Roberts Aff."). These documents indirectly confirm that the Partnership had previously pursued a Markup-To-Market request and had executed interim HAP extensions while concluding such requests. Roberts Aff., Ex. B, § 8, p. 13.[4]

Viewing all of the Complaint's allegations as a whole, as true, and with all reasonable inferences drawn in their favor, it is apparent that Plaintiffs have pleaded particular facts and circumstances sufficient to: (i) demonstrate "why" Defendants' statements and omissions were fraudulent and misleading; and (ii) support a reasonable inference that Defendants knew and deliberately or recklessly disregarded the adverse circumstances created by their statements and

---

[4] The Motion to Dismiss also erroneously claims that the Complaint alleges that the Project was not participating in the Markup-to-Market Program. Defendants' Memorandum at 7. In fact, what the Complaint does allege is that "prior to the Tender Offer, the Partnership had not raised unit rents at the Project to the levels permitted under the Markup-to-Market Program." *Id.* ¶61.

omissions. *See Greebel*, 194 F.3d at 193-94. Accordingly, Plaintiffs' Complaint fully complies

with the particularity in pleading requirements set forth in § 78u-4(b)(1) and Rule 9(b).

### POINT III
### THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT GIVE RISE TO A STRONG INFERENCE OF SCIENTER.

Defendants assert that Plaintiffs' Complaint fails to plead with the requisite particularity

facts sufficient to give rise to a strong inference of scienter. Once again, Defendants improperly

insist on examining certain factual allegations in isolation, an analytical approach that has been

rejected by the First Circuit. When making a scienter determination pursuant to Section (b)(2)

and Rule 9(b), courts are required to employ a case-by-case, fact-specific approach, considering

allegations of the complaint *as a whole*. *Cabletron*, 311 F.3d at 40 ("Each individual fact about

scienter may provide only a brushstroke, but the resulting portrait satisfies the requirement for a

strong inference of scienter under the PSLRA."). An inference of scienter must be reasonable

and strong, "but not irrefutable. . . . Plaintiffs need not foreclose all other characterizations of

fact, as the task of weighing contrary accounts is reserved for the fact finder." *Aldridge*, 284

F.3d at 82. Under this standard, the Complaint satisfied the PSLRA's and Rule 9(b) pleading

requirements concerning scienter.

### A.    The Supporting Allegations Concerning The Project's Valuation, The Markup-To-Market Program, And Defendants' Knowledge Give Rise To A Strong Inference Of Scienter.

Defendants' scienter arguments largely mirror their arguments with respect to pleading

fraud with particularity under Section (b)(1). They assert that the Complaint's allegations

concerning the Project's value and Defendants' knowledge and experience are insufficient to

show that the Defendants' acted with scienter because neither allegation is made with additional

factual support. Defendants claim that this asserted defect requires that the Complaint must be

dismissed. Defendants are wrong again.

As noted previously, Plaintiffs' factual allegations concerning a $15 million valuation of the Project, either pursuant to a sale or refinancing, were not made upon information and belief, rendering it unnecessary and indeed illogical to require a "source." *See* Complaint ¶92-96. But even if they had been, they do not stand alone, and may not properly be analyzed in isolation for purposes of a scienter determination. *Cabletron*, 311 F.3d at 40 (holding that courts must consider the totality of the circumstances, rather than examining each alleged omission or misstatement in isolation).

Plaintiffs' allegations concerning Defendants' substantial knowledge of the valuation and financing of the Project, and the availability and effect of the Markup-To-Market Program constitute "articulated inferences to be drawn from other facts[.]" *Allaire*, 224 F.Supp.2d at 326. These allegation also are entirely consistent with the representations contained in the September 30 Letter regarding the financing and valuation of the Project, clearly evidencing Defendants' knowledge. *See* Complaint ¶76-83. The Partnership's 2003 audited financial statements also provide direct evidence that Defendants had substantial knowledge and experience with the valuation and financing for Section 8 Housing projects, and HUD's Markup-To-Market Program, including in relation to the Project itself. Roberts Aff., Ex. B. §8., p. 13.

Defendants glibly state that Plaintiffs' allegations amount only to a charge that Defendants "must have known" about the true value of the Project, adding that "Plaintiffs point to nothing about [Defendants'] experience with Section 8 housing projects that would create a strong inference[.]" Defendants' Memorandum at 10, 12. Essentially arguing that there is no firm proof of knowledge, Defendants feign ignorance on matters concerning the valuation and financing of the Project, and the availability and effect of the Markup-To-Market Program,

17

subjects upon which they have made affirmative statements, some of which have been made with clear intent to induce reliance from Plaintiffs.

Defendants' position is contrary to the holding in *Aldridge*, in which the First Circuit declared that with respect to allegations of defendants' knowledge of fraud, all inferences must be drawn in plaintiff's favor, rather than in favor of the defendant. 284 F.2d at 79. Far from merely alleging "scienter by status," Plaintiffs have alleged that Defendants made specific fraudulent statements, affirmatively misportraying the Partnership, the Project, and their future prospects. *See* Complaint ¶¶ 76-81. Plaintiffs have also alleged that Defendants made material omissions by failing to disclose information regarding the Markup-to-Market Program, the valuation of the Project, the amount of refinancing the Partnership could support, and the value of Plaintiffs Partnership interests. *Id.* ¶¶50-60, 82-83, 96. The Complaint goes on to allege that within a two months of the stated closing date of the Tender Offer, Defendants moved forward with a request to increase the Project's rents to market levels. *Id.* ¶91. These additional factual allegations of misconduct and other circumstances create a strong inference that Defendants "consciously intended to defraud" or acted with "a high degree of recklessness." *Aldridge*, 284 F.3d at 82.

Among the types of evidence considered relevant in determining scienter, the First Circuit has found the following examples relevant: insider trading; divergence between internal reports and external statements on the same subject; closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; disregard of the most current factual information before making statements; disclosure of accrual basis information in a way which could only be understood by sophisticated person with a high degree of accounting skill; and self-interested motivation of defendants in the form of saving salaries or jobs. *See*

18

*Greebel*, 194 F.3d at 196.

Plaintiff have alleged that Defendants' motivation for their omissions and misrepresentations was to: (i) acquire Plaintiffs' economic interests in the Partnership; (ii) acquire voting control over the Partnership's sale of the Project or refinancing of its debt; and (iii) enrich themselves unfairly at the expense of and to the detriment of Plaintiffs. Complaint ¶¶8, 86. Plaintiffs have further alleged that Defendants omitted material disclosures and made misrepresentations in order to: (i) prevent the Plaintiffs from making further inquiry into the value of the Partnership; (ii) prevent the Plaintiffs from learning the Partnership's true value; and (iii) induce Plaintiffs to sell their interests in the Partnership for less than fair value. *Id.* ¶87. The Tender Offer, which was executed through the September 30 Letter, provided the opportunity for Defendants to achieve these benefits that motivated their fraudulent misstatements and wrongful nondisclosures. *Id.* ¶69, 70.

The case law upon which Defendants rely is of no real support to their position. This case is not some strike suit seeking to capitalize on a drop in stock price. This is a case of partner self-dealing, in which the sophisticated General Partners convinced their limited partners to sell back their partnership interests at a low-ball price based on demonstrably false and misleading statements concerning the income potential of the Partnership, and who then immediately took steps to increase significantly the Partnership's income. Certainly it is a reasonable inference from these well-pleaded facts that the general partners intended to "deceive, manipulate, or defraud" Plaintiffs. *Ernst & Ernst v. Hochfelder*, 425 U.S. at 193 n. 12. In short, the Complaint's motive and opportunity allegations, combined with all of the other facts and circumstances alleged in the Complaint, implicate nearly all of the scienter factors enumerated in *Greebel*. 194 F.3d at 196. Viewing the allegations contained the Complaint as a whole, as true,

and with all reasonable inferences drawn in their favor, it is apparent that Plaintiffs have sufficiently alleged facts and circumstances with particularity to give rise to a strong inference of scienter, warranting denial of the Motion to Dismiss. *Id.*

**B.    The Partnership's 2003 Financial Statements Do Not Negate An Inference Of Scienter.**

Defendants assert that all inferences of scienter are negated by information contained in the September 30 Letter and its passing reference to the "audited financial statements that you recently received." Defendants' Memorandum at p. 18. Defendants also contend that scienter inferences are negated by their statement contained in the September 30 Letter that "the General Partners will request renewal of each Section 8 contract but it is not known what rental level HUD will approve at this time." *Id.* p. 18-19. Rather than negating inferences of scienter, the two documents cited by Defendants give rise to a remarkably strong inference of scienter.

First, the September 30 Letter's statement concerning HAP contract renewal is completely devoid of any mention of the availability of the Markup-To-Market Program or its effect on the value of the Project. Admittedly, the Letter asserts that the rental levels are unknown; however, it conveniently fails to disclose that an increase of 150 percent or more was potentially available pursuant to the Markup-To-Market Program. This omission is particularly egregious when understood in the context of the September 30 Letter's bleak, but inaccurate, portrayal of the Project as a tax shelter that had run its course, with only the prospect of generating tax liabilities and little or no likelihood of generating cash distributions for Investor Limited Partners. Complaint ¶¶76, 77. The September 30 Letter's mention of the Partnership's 2003 audited financial statements is similarly obscure. The Letter refers the reader to the financial statements for an explanation of the details of the Partnership's Purchase Money Note, not for any other purpose, and certainly not the Markup-to Market Program of the valuation of

the Project or Plaintiffs' Partnership interests. *Id.* Ex.. A.

In addition, consideration of the 2003 audited financial statements is fatal to Defendants arguments. Defendants seek to utilize statements contained in these documents concerning the Markup-To-Market Program as a proxy for full and fair disclosure in relation to the Tender Offer. However, a cursory examination of these statements, which were *not* submitted to Plaintiffs at the same time they received the Tender Offer, reveals that they at once say too much and too little regarding the Markup-To-Market Program and its effect on the Project's value.

Buried in the minutiae of 2003 financial statements is a declaration that the Partnership was "in the process of completing a request to mark up to market," while also vaguely alluding to the "increases pursuant to MAHRA." Roberts Aff., Ex. B. §8, p. 13. These statements conclusively establish that Defendants were aware of the Markup-To-Market Program, and its attendant "increases" in rent levels. However, the level of explanation contained in such statements cannot be fairly characterized as a meaningful disclosure of material facts concerning the Program or its effect on the Project's value, especially under the attenuated "disclosure by proxy" scenario suggested by the Defendants. It is undisputed that a party who discloses material facts in connection with securities transactions "assume[s] a duty to speak fully and truthfully on those subjects," and may not choose to deal in incomplete disclosures or half-truths. *Helwig v. Vencor, Inc.*, 251 F.3d 540, 561 (6th Cir. 2001); *see also V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 415 (1st Cir. 1985) ("a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party.").

Far from negating scienter, these two documents conclusively demonstrate that Plaintiffs have alleged particularized facts and circumstances sufficient to raise a strong inference of

scienter. *See Aldridge*, 284 F.3d at 83 (stating that published statements made with knowledge of facts suggesting the statements are inaccurate or misleadingly incomplete is "classic evidence of scienter."); *Greebel*, 194 F.3d at 196 (stating as relevant to a scienter determination, *inter alia*, divergence between internal reports and external statements on the same subject; closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; disregard of the most current factual information before making statements; disclosure of accrual basis information in a way which could only be understood by sophisticated person with a high degree of accounting skill; and self interested motivation of defendants in the form of saving salaries or jobs). As such, this Court should deny the Motion to Dismiss.

## POINT IV
## PLAINTIFFS' REMAINING, SECONDARY CLAIMS ARE NOT SUBJECT TO DISMISSAL.

Defendants also seek dismissal of the remaining Counts of the Complaint, which sound in breach of fiduciary duty, negligent misrepresentation, and breach of contract, civil conspiracy, and aiding and abetting breach of fiduciary duty. Defendants' argument here runs as follows: (i) each of these claims arise out of the same set of operative facts as the Counts asserting fraud; (ii) because these claims assertedly "sound in fraud" the pleading requirements of Rule 9(b) apply; and therefore (iii) since fraud has, assertedly, not been pled with particularity, each of these counts must also be dismissed.

This flawed syllogism is founded upon erroneous premises, which are bootstrapped to a faulty legal proposition. While there is necessarily some overlap of the allegations pertinent to these claims and those pertaining to counts one through three -- hardly surprising given that all of the claims arise out of a single transaction -- each of the distinct claims pled in the Complaint is based on differing elements and supported by different factual allegations. Simply put, although

22

Counts four through eight of the Complaint involve the same parties and subject matter, these claims arise independent of the claims arising out of Defendants' fraud and/or violation of the federal securities laws.

Furthermore, the assertion that Rule 9(b)'s pleading requirements pertain to claims other than fraud is, quite simply, false. As to those claims, Rule 8 alone applies. And the Complaint certainly sets forth "a short and plain statement of the claim showing that the pleader is entitled to relief" with respect to each of those claims as required under Rule 8. Fed. R. Civ P. 8. The cases cited in Defendants' Memorandum lend no support to their argument. One group, including *In re Computervision Corp. Sec. Lit.*, *Ellison v. American Image Motor Co.*, *In re Ultrafem, Inc. Sec. Lit.*, and *Hershey v. MNC Fin., Inc.*, deals with the issue of whether Rule 9(b) applies to claims made under Sections 11 and 12 of the Securities Act of 1933 that "sound in fraud." The other group, including *Frota v. Prudential-Bache Sec., Inc.*, *Mosko v. Defilippo*, and *Smith v. Office of Servicemembers Group Life Ins.*, involved claims that, while called something else, were based solely on allegations of fraudulent conduct. Neither factual matrix is involved in this case, rendering these decisions inapposite.

Defendants' final argument -- that Counts Seven and Eight must be dismissed because the claims asserting the underlying torts (fraud and breach of fiduciary duty) must also be dismissed -- fails as well. The Complaint has sufficiently pled both of the underlying torts. Accordingly, the derivative claims of conspiracy and aiding and abetting stand as well.

In short, Plaintiffs reject Defendants' cursory, generalized assertion that Plaintiffs' remaining claims and secondary claims are derivative of their claims that sound in fraud, and therefore must be dismissed. Neither the PSLRA nor Rule 9(b) apply to these claims. But even if they did, Plaintiffs' Complaint sufficiently alleges the "time, place, and content" of the false

23

and misleading statements and omissions, the reasons why such statements are false and misleading, and particular facts giving rise to a strong inference of scienter. *See* 15 U.S.C. § 78u-4(b)(1)&(2); *Greebel*, 194 F.3d at 191. Thus, whether sounding in fraud or not, each and every remaining claim applies against Defendants with full effect.

### Conclusion

For all of the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied.

Dated: September 2, 2005

Respectfully submitted,

Paul McDonald
(*Pro Hac Vice* Granted)
Daniel Murphy
BBO # 656021
Bernstein, Shur, Sawyer & Nelson
100 Middle Street
P. O. Box 9729
Portland, Maine 04104-5029
(207) 774-1200

John J. O'Connor
BBO # 555251
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA  02110
(617) 951-2077

Attorneys for Plaintiffs

621852_1
14941-91178

24

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a copy of the attached document as follows:

**By First Class Mail**

Paul McDonald, Esq.
Daniel J. Murphy
Bernstein, Shur, Sawyer & Nelson
100 Middle Street
P.O. Box 9729
Portland, ME  04104-5029

**By Hand**

Steven M. Hansen, Esq.
Donald Savery, Esq.
Christina Davilas, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110

Dated: September 2, 2005.

John J. O'Connor